1

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

3

4

5

ROSA EDEZA AGUILERA,

No. 1:21-cv-00384-GSA

6

7                            Plaintiff,

**ORDER DIRECTING ENTRY OF**
**JUDGMENT IN FAVOR OF DEFENDANT**
**COMMISSIONER OF SOCIAL SECURITY**
**AND AGAINST PLAINTIFF**

v.

8

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

9

10                            Defendant.

**(Doc. 23)**

11

12

13        **I.        Introduction**

14            Plaintiff Rosa Edeza Aguilera ("Plaintiff"), proceeding *pro se*, seeks judicial review of a

15    final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") granting

16    in part and denying in part her application in for supplemental security income pursuant to Title

17    XVI of the Social Security Act.  The matter is before the Court on the parties' briefs which were

18    submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 23, 25.  After

19    reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's

20    decision.

21

22        **II.       Factual and Procedural Background[2]**

23            On January 22, 2019, Plaintiff applied for supplemental security income alleging a disability

24    onset date of February 24, 2018, due to removal of both breasts with subsequent reconstructive

25

26

27    ------------
       [1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 12 and 20.

28    [2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and
       testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant
       portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

surgeries with resulting pain, tingling and numbness in her right upper extremity.  Ex. 5E and 8E; AR.  The Commissioner denied the application initially on May 22, 2019, and on reconsideration on August 16, 2019.  Plaintiff filed a request for a hearing on September 30, 2019.

On November 13, 2019 however, Plaintiff signed and filed a document entitled "waiver of your right to personal appearance before an administrative law judge" indicating she could not attend the hearing due to pain and an upcoming surgery. AR 86.  It is not clear if she was advised of the option to appear by telephone or video conference (or if such an option was even available as this was just prior to the pandemic).

Nevertheless, she did not request a continuance or other accommodation, and the title of the form she signed as quoted above is self-explanatory in that it indicates an intention to waive her right to appear. As such, the ALJ found she had waived the right to a hearing and no hearing was held.  Plaintiff has not suggested in her filings that she was disadvantaged by the lack of a hearing.[3]

On August 7, 2020 the ALJ issued a partially favorable decision finding: 1) Plaintiff became disabled as of August 4, 2020 (due to an upcoming change in age category from 54 to 55 shortly following the decision date which, combined with Plaintiff's RFC and vocational background, resulted in a finding of disability pursuant to medical-vocational rule (aka "grid" rule) 202.01; and 2) that Plaintiff did not become disabled as of February 24, 2018 as alleged.[4]  AR 11–22.  The

---

[3] Other than mentioning her  unbearable nerve pain in her arm, she did not indicate a desire or intention to present any information in support of her claim at a hearing or in any other context, but rather noted that her physicians had already filed the necessary paperwork and that she had yet to receive any funds, suggesting it was a forgone conclusion that her claim was meritorious.   She deferred any additional questions to her physicians and she provided their phone numbers.  The content of her motion for summary judgment is similarly matter of fact in that it seeks nothing more than to inform the reader that, as clearly stated in her physicians' letter, she did in fact become disabled in February of 2018 and not in August of 2020 as the commissioner concluded,  suggesting perhaps that it was  a clerical error which could be easily corrected with reference to her physician's letter.

[4] In any event benefits would be payable no earlier than the month following her filing date of January 22, 2019 regardless of her disability onset date because, unlike claims for disability insurance benefits (which are payable retroactively to disability onset, and hinge in part on a claimant meeting insured status requirements) claims for supplemental security income apply only prospectively from the date the claim is filed. 20 C.F.R. § 416.305(a), 416.330(a).  The decision is partially favorable in that it found Plaintiff *did* become disabled as of August 4, 2020.  As such, regardless of her alleged disability onset date, the only eligible period for which she can seek back payment of benefits is the 18 month period between February 2019 and August 2020 (but for the reasons explained in this decision,

Appeals Council denied review on January 5, 2021.  AR 1–5.  On July 12, 2021, Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and

---

the appeal will be denied because the ALJ properly concluded Plaintiff was not disabled prior to August 4, 2020).

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of January 22, 2019. AR 13. At step two the ALJ found that Plaintiff had the following severe impairments: genetic carrier of breast cancer gene on chromosome 13 (BRCA2) status post prophylactic mastectomy and reconstruction. AR 13. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: uterine fibroids, leiomyoma, status post supracervical abdominal hysterectomy and bilateral salpingo-oophorectomy; high cholesterol;

4

right wrist pain and mild ulnar minor variance.  AR 13.  The ALJ determined that Plaintiff's alleged back pain was not attributable to any medically determinable impairment.  AR 14.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 65–67.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a reduced range of light work as defined in 20 C.F.R. 416.967(b) with the following restrictions: occasionally push/pull and lift/carry 20 pounds and frequently do so with 10 pounds; sit for one hour at a time and six hours total; stand and walk for one hour at a time and six hours total; frequently stoop, kneel, crouch, and crawl; frequently climb ramps, stairs, ladders, ropes, and scaffolds; occasional reach overhead with the right upper extremity; frequently operate foot controls.  AR 15–19.

Because there was no hearing the ALJ obtained the Vocational Expert's responses via a "Vocational Interrogatory" questionnaire (Ex. 10E, AR 170–78).  In reliance on the vocational interrogatory responses the ALJ concluded at step four that Plaintiff could not perform her past relevant work as a housekeeper cleaner as actually or generally performed.  AR 19.  At step five the ALJ concluded that, prior to Plaintiff's change in age category on August 4, 2020, Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: office helper, information clerk, and photocopy attendant.  AR 20.  Accordingly, the ALJ concluded that Plaintiff was not disabled prior to August 4, 2020, but did become disabled on that date.  AR 21.

## V.    Issues Presented

The most relevant argument Plaintiff provided in response to the ALJ's decision letter was a one page letter attached to her complaint.  The Court will consider the allegations made in that letter as well as her current letter docketed as a motion for summary judgment.

Fundamentally, Plaintiff maintains she became disabled following her February 27, 2018 mastectomy. The ALJ disagreed, finding Plaintiff had the residual capacity to perform light work through the date her age category changed on August 4, 2020,[5] but did become disabled on that date.

## A.        Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility,[6] resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

---

[5] This however is somewhat confusing as her date of birth is actually November 10, but the ALJ found as of the effective date of the ALJ's decision (which was actually signed August 7 but for some reason had an effective date as of August 4), Plaintiff was *close enough* to the subsequent age category.

[6] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

1    Cir. 1986)).

2
3        For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy

4    of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight,

5    including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

6    including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, when evaluating

7    any medical opinion, the regulations provide that the ALJ will consider the factors of supportability,

8    consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).

9
10   Supportability and consistency are the two most important factors and the agency will articulate

11   how the factors of supportability and consistency are considered.  *Id.*

12       A claimant's statements of pain or other symptoms are not conclusive evidence of a physical

13   or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.  An ALJ

14   performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain

15   or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80

16   F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an

17
18   impairment that could reasonably be expected to produce some degree of the symptom or pain

19   alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first

20   step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence

21   of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's

22   ability to perform work-related activities."  S.S.R. 16-3p at 2.

23       An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and

24   convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

25
26   at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

27   corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

28   determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261

7

F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### B.   Analysis

#### 1.   Plaintiff's Past Work as a Housecleaner

In the statement of claim attached to her complaint, Plaintiff first argues as follows:

> Per the decision letter, it states that prior to Aug 4, 2020 I was not disabled because I was working as a housecleaner at that time and therefore it appears I was able to work.  On the contrary, the only reason I was able to work was because the client I cleaned for understood my physical limitations and allowed me to take several breaks throughout the day and work at my own pace.

> Also, if I had another source of income, I would not have worked as I was in tremendous pain most of the time.  I suffered dearly as a result of continuing to work, even if it was only housekeeping.  Therefore, although it may appear that I was able to work, it was the only job I could do at the time to make ends meet.

Doc. 1 at 6.

An ALJ can rely on a claimant's activities as a basis for discrediting a claimant's testimony if (1) the daily activities contradict the claimant's other testimony; or (2) "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

It is understandable that Plaintiff was given accommodations by the client she cleaned for, accommodations which would not necessarily be available in competitive full time employment in the national economy.  That contextual information would have been helpful to provide at the agency level, such as in an exertional questionnaire or at the hearing (which she waived her right to attend).  Thus, that information was not before the ALJ.

8

Importantly, Plaintiff misconstrues the ALJ's finding. The ALJ did not find that Plaintiff could work as a housecleaner again, to the contrary, the ALJ found (based on the Vocational Expert's interrogatory responses) that an individual with Plaintiff's limitations could *not* perform her past work as housecleaner. AR 19. Nor did the ALJ find in so many words that the work as a housecleaner establishes she can do other work. Rather, the ALJ found Plaintiff's description of her housecleaner work as "active work" was inconsistent with other contentions she made including that she could not lift more than 10 pounds, or effectively grab and hold items. AR 17 (citing Exs. 3F/12/78-102 and 6F/8-24). The ALJ's finding here was not unreasonable. More importantly, as discussed in more detail below, the ALJ identified many other reasons, including the objective medical records, in support of her conclusion as to what work activity Plaintiff could perform (the RFC). Plaintiff does not acknowledge or dispute any other component of the ALJ's analysis.

### 2.      Dr. Hoyt's Opinion

Plaintiff also attaches a letter from her plastic surgeon, Dr. Hoyt, dated July 17, 2020. Doc. 23 at 2. This letter was already in the record (AR 183) though it was not discussed by the ALJ and, confusingly, the Appeals Councils stated they declined to exhibit the letter because there was no reasonable probability it would affect the outcome. AR 2. An Appeals Council denial of a request for review is a non-final agency action not subject to judicial review because when review is denied, the ALJ's decision becomes the final decision of the Commissioner. *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case. 20 C.F.R. § 416.1435(a). The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals

Council that relates to the period on or before the ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5). Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" that the new evidence would have changed the outcome. 20 C.F.R. § 404.970; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

Here, there was no hearing, hence it is not clear when the evidence submission deadline concluded. And, again, despite the Appeals Council declining to exhibit the letter, it was already included in the record. Thus, it is not clear whether it is necessarily "new evidence," but it was constructively new given that the ALJ did not discuss it or appear to review it. If it were to meet the materiality standard quoted above, remand would be appropriate for the ALJ to consider it. The letter reads as follows.

> To whom it may concern:
>
> This letter is in support of Ms. Aguilera for her application for disability. She has a history of treatment for high-risk breast disease with bilateral mastectomies and reconstruction. She has undergone treatment since 1/2018 including five operations. Unfortunately, she has had chronic pain in the right axillary area over this period of time and his [has] been unable to work as a housekeeper during that time.
>
> I do not anticipate significant improvement in her condition and do not feel she will be able, as a housekeeper with that type of physical rigorous work in the future, and in my opinion is unable to do this type of work on a permanent basis.
>
> Doc. 23 at 2.

This letter however is not material as it does not bear directly or substantially on a matter in dispute, and it presents no reasonable "probability" (to use the language of the regulations), or reasonable "possibility" (to use the language of the Ninth Circuit) that it would affect the outcome.

The letter merely states that she could not perform work as a housekeeper during the period in question and will not be able to do so in the future due to pain in the right axillary area that is

not expected to improve.  This is consistent with the ALJ's finding.  Again, the ALJ's decision did not find that Plaintiff could perform her past work as a housekeeper.  The ALJ's decision found Plaintiff could perform the work functions specified in the RFC and therefore could perform other work in the national economy (as the VE opined).  Dr. Hoyt does not address any specific work related function other than the broad statement that she could not perform "that type of physical rigorous work in the future."  Dr. Hoyt does not explain what he considers physically rigorous work, and from that one could not conclude that this limitation would prohibit the work functions specified in the RFC.

In short, Dr. Hoyt's letter is insufficiently specific to affect the outcome of Plaintiff's appeal.

### 3.	Plaintiff's Post-Surgical Symptoms and Limitations

Plaintiff further argues as follows:

Although the letter states that I had a "lack of significant symptoms" at my follow up appointments post op, these findings were only my initial response to the treatment. However, after some time I did begin to feel more severe symptoms and residual effects. As stated in the letter I did need an additional procedure to revise and replace my implants, which again, initially felt better but continued giving me problems as time went on. This information has also been supported by my doctor who has been treating me throughout the duration of this.

Doc. 1 at 6.

More specifically, and for ease of reference, Plaintiff underwent the following surgical procedures:

1)	February 27, 2018 bilateral prophylactic mastectomy with immediate reconstruction performed by plastic surgery (the mastectomy performed by Dr. Hegazy, and the reconstruction performed by Dr. Hoyt (3F/136, AR 403)).

2)	October 9, 2018 bilateral breast reconstruction (Ex. 3F/59, AR 326)

3)	December 3, 2018 supracervical hysterectomy and bilateral salpingo-oopherectomy

(Ex. 3F/106; AR 373)

4)   February 22, 2019 bilateral breast reconstruction revision with fat grafts from the abdomen (Ex. 2F/7, AR 216)

5)   January 28, 2020 reconstruction revision with replacement of the implants with smaller implants (Ex. 6F/14)

As to what limitations the record supports during this period, it is useful to provide an overview of Plaintiff's description of her post-surgical history, her alleged limitations, and the ALJ's related findings.

Plaintiff's letter in support of her motion for summary judgment offers a description of her post-surgical treatment and symptoms which can be distilled down to the following assertions: 1) following her February 2018 surgery her right side took a long time to heal and she was prescribed medication including sulfur sulfadiazine topical cream and she was monitored for infection; 2) it took 4 months for her to heal and move forward with her next reconstructive surgery; 3) she took a long time to heal from her next surgery; 4) lifting and movement on her right side was painful and minimal; 5) Dr. Hoyt was aware of the pain and discomfort on her right side; 6) she was cleared for light duties and to continue her every day work but the pain and inflammation persisted and she made Dr. Hoyt aware of this; 7) they agreed a smaller implant may solve the problem; 8) she had yet another surgery to replace the implants and the healing process began again; 9) healing took a long time again and her right side remained painful; 10) she couldn't work for long periods of time and her boss accommodated that; 11)  physical therapy did not help; 12) she could not perform her work without discomfort; 13) lifting, pushing, and pulling continued to hurt and there was no fix; 14) on June 17, 2020 Dr. Hoyt knew there was no fix for the axillary area; 15) she had to stop working.  Doc. 23 at 1.

As for her allegations in the administrative proceedings (including function reports) she

alleged difficulty lifting, grabbing, holding, and reaching overhead, fatigue and weakness of the right arm, can lift no more than 10 pounds, cannot lift a full trash bag or laundry basket, requires assistance from store associates when shopping, only does light cleaning at home.  Ex. 2E, 4E, 5E, 8E.

The ALJ made the following findings about the objective medical record:

1) Plaintiff underwent bilateral mastectomies on February 27, 2018 with immediate tissue expander reconstruction;

2) "postoperatively, she reported doing well."  (Ex. 3F/53-132);

3) her pain was treated with ibuprofen and heat (3F/53/79/127/132);

4) On January 3, 2019 she reported doing ok but complained of breast flattening though clinical examination showed stable implants with some hollowing in the upper pole (3F/11-12);

5) she underwent revision surgery on February 22, 2019 (Ex. 3F/57-58);

6) post operatively she reported doing well (3F/6);

7) on May 1, 2019 she attended a consultative examination with Dr. Lakamsani which noted a) she was able to turn a door knob, manipulate a button, and pick up a coin from a desk despite her contention that she cannot grab and hold items; b) she had full shoulder range of motion, full strength throughout, and normal muscle tone despite being very tender around her right breast and despite pain with overhead reaching (which the ALJ found she could only do occasionally); c) her sensation was grossly intact to light touch and pinprick despite her allegation of numbness. (Ex. 4F, AR 422–28).

8) in June 2019 she was doing well with decreased rippling and better implant symmetry; she reported lateral breast pain but was otherwise healing well; she was

released to full exercise with no lifting limitations; the lack of significant symptoms by June 2019 is inconsistent with disabling pain and limitation for at least 12 continuous months during the relevant adjudicatory period (6F/25).

9) In September 2019 she complained of implant pain and was diagnosed with implant displacement (6F/22)

10) she sought treatment for right shoulder pain, numbness and tingling in her arm in November 2019 and was treated with ibuprofen and stretching exercises, conservative treatments which undermine her allegation of disabling symptoms (7F)

11) On January 28, 2020 she underwent another revision with implant replacement (6F/14)

12) on February 24, 2020 she was very pleased with the surgical outcome, was healing well, her pain was treated with ibuprofen; the positive response to surgical intervention within 12 months of her application date is inconsistent with allegations of disabling symptoms associated with her surgical history.

AR 16-17.

As stated above, Plaintiff applied for supplemental security income[7] on January 22, 2019, and therefore the relevant adjudicatory period began on that date and ran through the date of the ALJ's decision on August 7, 2020[8] (though the ALJ considered earlier dated evidence as well and

---

[7] She actually applied for "A period of disability and/or all insurance benefits for which I am eligible under title II and Part A of Title XVIII of the Social Security Act" . . . an application which the agency designated thereafter as an application for supplemental security income, not social security disability benefits, ostensibly based on the agency's determination that Plaintiff did not meet insured status/earnings requirements for SSDI prior to her application date.

[8] Unlike claims for disability insurance benefits (which are payable retroactively to disability onset, and hinge in part on a claimant meeting insured status requirements) claims for supplemental security income apply only prospectively from the date the claim is filed. 20 C.F.R. § 416.305(a), 416.330(a).  And, again, the decision is partially favorable in that it found Plaintiff *did* become disabled as of August 4, 2020.  As such, regardless of her alleged disability onset date, the only eligible period for which she can *seek* back payment of benefits is the 18 month period between February 2019 and August 2020 (but for reasons explained in this decision, the appeal will be denied because the ALJ properly concluded Plaintiff was not disabled prior to August 4, 2020).

purported to adjudicate Plaintiff's RFC as of the alleged February 24, 2018 onset date).

The ALJ's conclusions are not necessarily supportable with respect to the period from February 2018 throughout Plaintiff's application date in January 2019, but the ALJ's conclusions are supportable as to the relevant adjudicatory period from the date of Plaintiff's application through the date of the ALJ's decision in August 2020.

For ease of reference again, Plaintiff underwent the following surgical procedures:

6) February 27, 2018 bilateral prophylactic mastectomy with immediate reconstruction performed by plastic surgery (the mastectomy performed by Dr. Hegazy, and the reconstruction performed by Dr. Hoyt (3F/136, AR 403)).

7) October 9, 2018 bilateral breast reconstruction (Ex. 3F/59, AR 326)

8) December 3, 2018 supracervical hysterectomy and bilateral salpingo-oopherectomy (Ex. 3F/106; AR 373)

9) February 22, 2019 bilateral breast reconstruction revision with fat grafts from the abdomen (Ex. 2F/7, AR 216)

10) January 28, 2020 reconstruction revision with replacement of the implants with smaller implants (Ex. 6F/14)

The ALJ's findings as to the post-surgical period between the February 2018 mastectomy and Plaintiff's application date in January 2019 are not entirely supported. The ALJ emphasized the rather generalized finding that Plaintiff was "doing well" post-op, for which the ALJ cited Exhibit 3F pages 53 to 132, and that she was treated with ibuprofen and heat, for which the ALJ cited several pages in that range. The ALJ was correct that the March 22, 2018 follow up with Dr. Hegazy did note, "patient doing well. Discussed wound carry and follow up with plastic surgery." Ex. 3F at 132. The June 1, 2018 follow up with Dr. Hegazy similarly noted "doing well. No need for further surgical follow up . . . continue follow up with plastic surgery." Ex. 3F at 127.

However, as referenced in the notes of Dr. Hegazy (who completed the mastectomy portion of the February 2018 procedure), contemporaneously Plaintiff was following up with plastic surgery at separate appointments, specifically Dr. Hoyt who performed the reconstruction portion of the February 2018 procedure and who also performed the subsequent reconstructions in October 2018, February 2019, and January 2020.  Dr. Hoyt's follow up notes are not as positive as Dr. Hegazy's,  and seemingly the ALJ did not identify this distinction.

Although Dr. Hoyt noted on March 26, 2018 (Ex. 3F at 51) that she was healing well (which in context likely means the incisions were healing as well as could be expected four weeks after surgery), three consecutive follow ups noted otherwise.  Three weeks later on April 16, 2018, Dr. Hoyt noted that she "still has a small area healing on the right side."  AR 315.  On May 21, 2018, Dr. Hoyt noted "will remove some volume to help with wound healing 240 cc removed. Check next week," suggesting the wound had still not fully healed.  AR 314.  On June 22, 2018, Dr. Hoyt noted "her post op wound healing problems on the right side. Not presently healed."  AR 302.  The plan was to "follow-up 3 weeks and plan replacement of the implants, nipple reconstruction in 2 months."  AR 302.

This tends to corroborate Plaintiff's assertion in her July 2022 letter (docketed as the motion for summary judgment) that her wound from her initial procedure did not heal well and that it took almost 4 months to heal and proceed with her next revision surgery (Doc. 23).  This also tends to corroborate Plaintiff's assertion in the letter attached to her complaint that, although she was doing well initially, she regressed thereafter resulting in additional revision procedures.  Doc. 1 at 6.  The ALJ did not cite or describe the three follow up visits with Dr. Hoyt in April, May, and June of 2018, or acknowledge the healing difficulties.

Further, the ALJ concluded the records following the February 2018 procedure noted pain was treated with ibuprofen and heat.  However, notations from March through December 2018,

following the February 2018 mastectomy, appear to note she was also treated (perhaps on an ad hoc basis, not chronically) with vicodin, oxycodone, hydrocode, and/or norco, all of which are opioids and are more aggressive pain management measures than ibuprofen and heat.  Ex. 3F/79, AR 346.

Moreover, Plaintiff underwent her second bilateral reconstruction with implant placement on October 9, 2018, which the ALJ did not discuss.  Ex. 3F/59, AR 326.  Plaintiff then underwent a supracervical hysterectomy and bilateral salpingo-oopherectomy on December 3, 2018.  Ex. 3F/106; AR 373.  Although the ALJ did cite that surgery at step two in finding no severe impairment related to the hysterectomy and salpingo-oopherectomy, the ALJ did not discuss it again when addressing  the longitudinal evidence in support of the RFC.  Granted, this procedure was for an unrelated condition (uterine fibroids, leiomyoma) which the ALJ found non-severe.  Plaintiff does not specifically contest that finding, and it seems unlikely that the hysterectomy and salpingo-oopherectomy exacerbated her primary complaint of pain and limitation stemming from her right axillary area.[9]  Nevertheless, this was still a third surgical procedure in 2018 which certainly did not make her recovery from the breast reconstructions easier.

In sum, during the period between her February 27, 2018 surgery and her January 22, 2019 application date, she: 1) experienced delayed wound healing as noted by Dr. Hoyt in April, May, and June of 2018; 2) underwent a second reconstructive procedure in October of 2018; 3) was treated with opioid based pain killers, and; 4) underwent a hysterectomy and salpingo-oopherectomy in December of 2018.  The ALJ problematically did not mention any of these four facts[10] and briefly addressed this 11-month period of time with a two sentence generalization that

---

[9] Granted, these records were exhibited in somewhat of a random order, many of them were duplicates and they were overall cumbersome to parse.

[10] The lone exception being the isolated reference to the hysterectomy at step two in finding a lack of evidence to support a severe impairment related to that condition.

Plaintiff did well post op with ibuprofen and heat therapy, after which the ALJ skipped ahead to the records from 2019. The ALJ's characterization was not factually accurate and minimized the significance of the ordeal Plaintiff went through in 2018 during which she was almost perpetually in a state of surgical recovery.

Notwithstanding, the error was harmless because the records following Plaintiff's January 22, 2019 application supported the ALJ's conclusion that Plaintiff did not establish disabling pain and limitation for at least 12 continuous months *during the relevant adjudicatory period*[11] (which, again, was demarcated as the date between Plaintiff's January 22, 2019 application and the date of the ALJ's decision on August 4, 2020).

One month after Plaintiff's January 22, 2019 application date, on February 22, 2019 she underwent a third reconstruction revision with fat grafts from the abdomen (and fourth surgery since the alleged onset date). Ex. 2F/7, AR 216.; Ex. 3F/57-58). In contrast to the earlier dated records discussed above, following her February 2019 reconstruction revision there do not appear to be any notations in the records that suggest problems with wound healing or complaints of substantial pain or dysfunction, despite Plaintiff's contentions.

The ALJ noted that on May 1, 2019 Plaintiff attended a consultative examination with Dr.

---

[11] Though, again, despite making this finding the ALJ did purport to adjudicate Plaintiff's RFC as of the alleged onset date of February 24, 2018, and the ALJ further stated the step four and five conclusions using February 24, 2018 as the operative date, as opposed to using the application of January 22, 2019, which the ALJ used as the operative date for the findings at steps one through three. The ALJ's ultimate conclusion was that "The claimant was not disabled *prior to* August 4, 2020, but became disabled on that date and has continued to be disabled through the date of this decision." AR 21 (emphasis added). The ALJ's inconsistent framing of the period under review is potentially troublesome from a *res judicata* standpoint. If Plaintiff was able to establish in a subsequent or contemporaneous SSDI application (which could conceivably already have been filed as of the date of this Court's decision) that her earnings record was sufficient to maintain insured status during the year or so following her February 24, 2018 alleged onset date, it's not clear if the agency would conclude her disability status was adjudicated as of the February 24, 2018 alleged onset date, or only as of the January 22, 2019 application date. From the Court's perspective, the Commissioner construed her application as one for supplemental security income with an effective date of January 22, 2019 (ostensibly because she did not report her housecleaner earnings, as the ALJ noted at step one). Plaintiff does not contest that decision and the Court therefore has no occasion to review it. To be clear, despite the ALJ's inconsistent framing of the relevant period under review, the Court will hold the agency to the position that the application was one for SSI and effective only as of the filing thereof. The Court is affirming the decision solely as to the period following Plaintiff's application date of January 22, 2019, and not as to the period between the alleged onset date of February 24, 2018 and the application date.

Lakamsani which noted: a) she was able to turn a door knob, manipulate a button, and pick up a coin from a desk despite her contention that she cannot grab and hold items; b) had full shoulder range of motion, full strength throughout, and normal muscle tone despite being very tender around her right breast and despite pain with overhead reaching (which the ALJ found she could only do occasionally), and; c) her sensation was grossly intact to light touch and pinprick despite her allegation of numbness. (Ex. 4F, AR 422–28).

As the ALJ noted, in June 2019 she reported doing well with decreased rippling and better implant symmetry (albeit a seemingly cosmetic consideration with minimal functional impact). Ex. 6F/25. She reported lateral breast pain but was otherwise healing well. *Id.* She was released to full exercise with no lifting limitations. *Id.* The ALJ found that the lack of significant symptoms by June 2019 is inconsistent with disabling pain and limitation for at least 12 continuous months during the relevant adjudicatory period. This conclusion is supported.

The ALJ observed that in September 2019 Plaintiff complained of implant pain and was diagnosed with implant displacement (Ex. 6F/22), though her related shoulder and arm symptoms were treated with ibuprofen and stretching exercises. Ex. 7F. On January 28, 2020 she underwent another revision with implant replacement. Ex. 6F/14. As of February 24, 2020 she was "very pleased" with the surgical outcome and was healing well. Ex. 6F/12. The ALJ found that Plaintiff's positive response to surgical intervention within 12 months of her application date is inconsistent with allegations of disabling symptoms associated with her surgical history. AR 16-17. The ALJ's conclusion here is likewise supported.

Plaintiff does not attempt to identify any evidence suggesting otherwise. She attached 286 pages of medical records to her most recent filing which appear to be duplicative of records already included in the Certified Administrative Record in this case which Plaintiff was served a copy of on February 24, 2022. Doc. 13-2. The copies in the Certified Administrative Record have the

19

advantage of being stamped with page numbers to which the ALJ's decision letter cited. Respectfully, the Court declines Plaintiff's invitation to refer to her paper clipped packet for exact dates and times.

Understandably, Plaintiff is a *pro se* litigant and may not understand the technical aspects of social security law, but Plaintiff's contention that she did not understand how to proceed due to a language barrier is not evident. Her filings are all clearly articulated in plain English and demonstrate a more than adequate vocabulary with essentially no errors in spelling, grammar or syntax. More importantly, the statement of claim attached to her original complaint in March of 2021 quoted and challenged specific aspects of the ALJ's decision letter (including the ALJ's finding that she worked as a housecleaner while allegedly disabled, and that she did not have significant symptoms). Although those challenges were not particularly well supported or fleshed out, it did demonstrate that she understood her assigned task to a large extent, a task which the Court re-explained in granting her an extension of time to file her motion for summary judgment. Doc. 21.[12] In short, the Court has no obligation to advance her arguments further. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

The ALJ's decision was in part based on subtle technicalities that Plaintiff possibly may not have understood, but are nevertheless dispositive. The ALJ did not conclude that Plaintiff had no impairments as of February 2018, nor that she could return to her old job. Rather, the ALJ found that Plaintiff had a specific set of limitations as set forth in the residual functional capacity assessment ("RFC") including lifting, carrying, sitting, standing, walking, and reaching. The RFC is "the most you can still do despite your limitations" and represents an assessment "based on all

the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Plaintiff's most recent letter explains in generalized terms that she suffered continuous pain and limitation, which does not suggest she was necessarily incapable of performing light work with the identified restrictions.

The ALJ accepted some, but not all, of Plaintiff's alleged limitations.  The ALJ then submitted this information to a Vocational Expert who concluded that Plaintiff could *not* perform her past work as a housecleaner but nevertheless could perform other jobs in the national economy such as office helper, information clerk, and photocopy attendant.  As such, Plaintiff was found not "Disabled" during the relevant period which has a very specific meaning under the Social Security Act.

Moreover, it is worth emphasizing for Plaintiff's benefit that the ALJ did not find that any specific medical developments took place on August 4, 2020 such that Plaintiff became disabled on that date as opposed to February 27, 2018 (an apparent misconception by Plaintiff).  Rather, the significance  of the August 4, 2020 date was that it was the effective date of the ALJ's decision, and as of that date Plaintiff was sufficiently close to age 55 that the ALJ considered her to be in a higher age category (i.e. moved her from the "closely approaching advanced age" category of ages 50-54, to the "advanced age" category of 55-60.). It was that change in age category, plus plaintiff's physical limitations (as reflect in the RFC), plus her educational background, plus her history of unskilled work, that resulted in the finding that she became disabled on August 4, 2020 pursuant to Medical-Vocational Rule ("grid rule") 202.01.

The relevant language from the ALJ's decision is quoted here:

Here, the claimant will reach the next higher age category within a few months after the date of adjudication. She is currently 54 years old and will attain age 55 on November 9, 2020 (Exs. 1D and 2D). The date of adjudication in this case is August 4, 2020. As discussed at Findings 4 and 5, the claimant has a residual functional capacity at the light exertional level and unskilled past relevant work. She has a limited education (Ex. 2E). In considering the claimant's current age of 54, residual functional capacity, past relevant work experience and education, medical vocational rule 202.10 directs a finding of "not disabled" (20 CFR Part 404, Subpart

P, Appendix 2, Section 202). Based on the claimant's non-mechanical age of 55, residual functional capacity, past relevant work and education, medical-vocational rule 202.01 directs a finding of "disabled" as of the date of adjudication.

AR 19.

### VI.    Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Rosa Edeza Aguilera.


IT IS SO ORDERED.

Dated:   __March 7, 2023__                    _____ /s/ Gary S. Austin_____
                                                              UNITED STATES MAGISTRATE JUDGE